Statement of the Case.
MONROE, C. J.
Mary A. Deubler died in New Orleans on February 14, 1914, leaving an olographic will, dated June 29, 1903, and containing the following, among other, bequests, to wit:
“I give and bequeath unto my niece, Miss Anna M. Deubler, my lot of ground, together with all the buildings and improvements thereon, in the square comprised within Basin, Customhouse, Bienville and Franklin streets, and everything it may then contain of movables, useful and ornamental, including my personal effects, jewelry, diamonds, etc.; the ¿remises are known as 225 Basin street.
“I give and bequeath unto my brother, Henry Deubler, three vacant lots of ground, of four that I own, in square comprised within Canal, Murat, Olympia and Cleveland sts — the three nearest to Murat st; also, the sum of $1,500, cash. * * * I give and bequeath unto my said niece, Miss Anna M. Deubler, the residue of my estate, hereby constituting her my residuary legatee. * * *
“I hereby nominate Mr. John Thomas Brady * * * to be my sole testamentary executor and detainer of my estate, with seisin, and without bond from the furnishing of which he is hereby dispensed.”
The will was proved and ordered to be executed. An inventory was ordered and taken. John T. Hearn, known as John T. Brady, was confirmed as executor, and Anna Maria Deubler (who had become Brady’s wife) was sent into possession as universal legatee, upon her petition, and upon her showing the payment of the special legacies (with the exception of those to Henry Deubler and his minor children, for which, upon his refusal to accept the same, deposits were made in court) and with the consent of the creditors; and, bn March 16, 1914 (the day upon which the judgment sending into possession was rendered), Henry Deubler instituted this suit, attacking the dispositions of the will in favor of Anna Deubler, in her capacity of universal legatee, substantially as follows: *554 Mary A. Deubler for the express purpose of illegally and fraudulently transmitting her property, through said Anna M. Deubler, to said J. T. Brady, who is incapable of receiving the property of said Mary A. Deubler, by either donation inter vivos or mortis causa, except to the extent of one-tenth of the whole value of the movable property belonging to her estate”; that on January 25, 1913, the decedent executed an act under private signature, acknowledged before a notary public, purporting to transfer to said Brady, in the form of an onerous donation, for the purported reimbursement and remuneration, “for services of the alleged value of $25,000, her residence on Esplanade street, with the contents thereof, of the value of $50,-000; that said Brady, knowing the same to be void because of his incapacity, suppressed said act during the life of the decedent,” but after her death, “in pursuance of the understanding and agreement existing between him, said Mary A. Deubler, and said Anna M. Deubler (and a few hours preceding his marriage to her, on February 21, 1914), by which he * * * was to have said property and all other property owned by said Mary A. Deubler (save the small special legacies), induced the said Anna M. Deubler to sign an act * * * wherein she declares that, ‘as the universal legatee of said Miss Mary A. Deubler, she, said Anna M. Deubler, hereby, approves, ratifies and confirms the said sale in its entirety.’ Petitioner specially, denies that there was any valid consideration for said pretended sale by said Mary A. Deubler to said J. T. Brady, and [alleges] that the attempted ratification and return of said property to said incapable person by said interposed person is in violation of a prohibitory law, and null and void in its entirety.
*552 That Brady and the deceased lived in open concubinage and were so living when the will was made, in 1903, and up to the death of the decedent; “that Anna M. Deubler is a mere intermediary,' interposed and selected by said
*554 “Petitioner avers * * * that said Mary A. Deubler was insane for about six months preceding her death, * * * and consequently unable to revoke the dispositions of said will in favor of said Anna M. Deubler, for acts of ingratitude, cruel treatment, and grievous injuries on her part towards the testatrix, who was the benefactress of the said Anna M. Deubler.
“Petitioner avers that the interposition, by said Mary A. Deubler, of said Anna M. Deubler, to receive and transmit her said estate to said J. T. Brady, who is incapable in law of receiving it, constitutes a fraudulent fidei commissum in law, and an imposition on petitioner, who is entitled to uncover and annul such disposition by such alleged will, and that such fraudulent fidei commissa are absolutely void, and the property covered by them returns to petitioner, as the brother and nearest heir at law of said Mary A. Deubler.”
It is alleged that Brady was incapable of receiving the appointment as executor, and that petitioner desires to have the same rescinded and to he, himself, appointed to that position; that said Brady and Anna M. Deubler, now his wife, concealed and omitted from the inventory certain real and personal property left by the decedent, and thereby lost whatever rights they may have had as testamentary heirs. The prayer is that Anna M. Deubler, now the wife of J. T. Brady, and J. T. Brady, to authorize her, and also on his own account, be cited, and that there be judgment annulling the judgment probating the will of Mary A. Deubler and the dispositions thereof which purport to constitute Anna M. Deubler the special legatee of the house on Basin street, with its contents, and residuary legatee, and decreeing her to be an intermediary, interposed for the purpose of receiving and transmitting to Brady property which he is incapable of receiving, further decreeing the said dispositions “to be fraudulent fidei commissa, designed and intended to circumvent and evade a prohibitory law, and decreeing them * * * as not written; or, in the alternative, decreeing the annulment of such dispositions * * * for acts of ingratitude, grievous injuries, and cruel treatment by her [Anna M. Deubler] towards the said Mary A. Deubler” ; that the appointment of Brady as executor be annulled, and that petitioner be appointed; and that there be judgment annulling the act of conveyance from Mary A. Deubler to Brady of January 13, 1913, and the act of ratification by Anna M. Deubler of February 21, 1914, and decreeing the property described therein to belong to the succession.
Defendants excepted to the petition for vagueness, misjoinder of parties and of causes of action, and for failure to disclose a legal cause of action. The exception last mentioned was sustained, and plaintiff prosecutes the appeal.
Opinion.
[2] The allegation “that said Mary A. Deubler was insane, for about six months preceding her death, * * * and was consequently unable to revoke the dispositions *556 of said will in favor of said Anna M. Deubler, for acts of ingratitude, cruel treatment, and grievous injuries on her part towards the testatrix” does not amount to an allegation that the acts referred to were commit-' ted by Anna M. Deubler.
[1] We are therefore of opinion that, in so far as it may be considered that this suit is predicated upon acts of ingratitude, etc., the exception of no cause of action was properly sustained.
The learned counsel for the defendant have directed their argument mainly to the support of the proposition that (quoting from the syllabus of their brief):
“Where an aunt, by last will and testament, valid in form and duly probated, leaves to her niece a special legacy and constitutes her residuary legatee, a petition, filed by the father ■of the residuary legatee, claiming that the will contains a fidei commissum, because the residuary legatee is charged to deliver the property to a third person, incapable of receiving, discloses no cause of action, because the direction to deliver, whether express or tacit, constitutes a simple fidei commissum. The will ■stands, quoad the residuary legatee. It is only in substitutions that the will is null as to the donee, instituted heir, or legatee.”
This court has not unfrequently construed article 1620 of the Civil Code to mean that substitutions and fidei commissa are thereby alike prohibited and null, “even with regard to the donee, the instituted heir or the legatee,” and that the property covered by fidei commissa returns to the heirs at law. Badillo v. Tio, 6 La. Ann. 134; Tournoir v. Tournoir et al., 12 La. 23; Liautaud v. Baptiste, 3 Rob. 441; Compton v. Prescott, 12 Rob. 74. But the later, with some of the earlier, jurisprudence has established the doctrine, applicable to cases in which the fidei •commissum is attached to a donation otherwise valid, that although the fidei commissum, being in violation of a prohibitory law, Is null that nullity does not carry with it the nullity of the donation, “and that the entire disposition is null in cases of substitution only.” Beaulieu v. Tornoir, 5 La. Ann. 481; Succession of Yancey, 20 La. Ann. 164; Succession of Beauregard, 49 La. Ann. 1176, 22 South. 348; Dufour v. Dercsheid, 110 La. 344, 34 South. 469; Succession of Reilly, 136 La. 347, 67 South. 27; Succession of Percival, 137 La. 203, 68 South. 409.
There is however, no jurisprudence to the effect that a donation made in fraud of the law and of the rights of third persons is any the less invalid, or any the less open to attack, when made through an interposed person than when made directly; and the grounds of action here relied on are that donations have been made to Brady which are sought to be disguised, or partly disguised, by apparently valid, donations to Anna M. Deubler, but which are void because, by reason of the relations which subsisted between Brady and the donor, and from considerations of public order and good morals, the law has declared Brady incapable of receiving them.
The provisions of the Civil Code, and the jurisprudence upon which the action is based, may be stated, in substance, as follows:
“Art. 1481. * * * Those who have lived together in open concubinage are respectively incapable of making to each other, whether inter vivos or mortis causa, any donation of immovables; and if they make a donation of movables, it cannot exceed one-tenth part of the whole value of the estate. Those who after-wards marry are excepted from this rule.”
“Art. 1491. * * * Every disposition in favor of a person incapable of receiving, shall be null, whether it be disguised under the form of an onerous contract, or be made under the name of persons interposed. The father and mother, the children and descendants and the husband or wife of the incapable person, shall be reputed persons interposed.”
“Art. 1710. * * * The same causes which, according to the foregoing provisions of the present title, authorize an action for the revocation of a donation inter vivos, are sufficient to ground an action for the revocation of testamentary dispositions [and then follows a proviso relating to forced heirs].”
In Badillo v. Tio, 6 La. Ann. 133, 134, it appeared that, by an apparently valid will, the testator had made the defendant his universal legatee, but the will was attacked on the ground that the purpose, and effect, was, *558 through the defendant, as an interposed person, to convey the estate to persons who, from considerations of good order and morals, were declared incapable of receiving the same. In sustaining the attach, the court said (among other things):
“The fact of interposition involving a question of fraud, there is no doubt that it may be proved by simple presumptions. B.ut there must be several presumptions leading to the same conclusion ; and, in order to make proof, they must all be graves, précises, et concordantes (citing C. C. 1842, 2267, now 1848, 2288). * * * When interposition is made probable, if the party alleging it shows the return of the property to the incapable person, he has nothing else to show.
“When the return has been made in the form of a sale, the legatee must prove the reality and good faith of the transfer.”
In Dupree v. Uzee, 6 La. Ann. 280, it was held (quoting from the syllabus) :
“A party will not be allowed to do that indirectly which cannot be done directly; and where a person, wishing to evade the prohibition of the law against donations to a concubine, has the title to a slave purchased by him made out as though the purchase had been made by the concubine, her title is no better than if it had been a donation in form. O. C. 1468 [now 1431]. The concealment of a donation to a person incapable of receiving, under the form of an onerous contract evidenced by a notarial act, is in law a fraud upon the heir; and to establish that fraud he may contradict the notarial act by parol proof or any other legal evidence.”
In Insurance Co. v. Harbor Protection Co., 37 La. Ann. 236, it was said:
“An acknowledgment can never be invoked to maintain a condition or state of things created in violation of a prohibitory law.”
And the statement is quoted as authority, with other cases to sustain it, in Ackerman v. Larner, 116 La. 115, 40 South. 581.
Our conclusion is that, with respect to the matters thus considered, the petition states a cause of action, and that the judgment appealed from must therefore be, in part, reversed. The other exceptions were not ruled upon by the trial court.
It is therefore ordered that the judgment appealed from be affirmed, in so far as it maintains the exception of no cause of action, as addressed to the allegations concerning the ingratitude, cruel treatment, and grievous,'injuries on the part of Anna M. Deubler towards the testatrix, and reversed in so far as it otherwise maintains that exception. It is further ordered that the case be remanded to the trial court to be there proceeded with according to law and to the views herein-above expressed, the costs of the appeal to be paid by the appellees, John T. Brady and Anna M. Deubler, now the wife of said Brady, and the costs of the trial court to await the final judgment to be rendered in the case.
See dissenting opinion of O’NIBLL, J., 71 South. 848.